## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHALLENGER TRANSPORTATION, INC.,

     Plaintiff,

     v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

     Defendant.

Civil Action No. TDC-14-3322

## MEMORANDUM OPINION

Plaintiff Challenger Transportation, Inc. ("Challenger") brings this consolidated action against Defendant Washington Metropolitan Area Transit Authority ("WMATA") requesting declaratory and injunctive relief for an allegedly unfairly awarded contract for paratransit services and for WMATA's refusal to release records relating to the contract award process. Pending before the Court are two Motions to Dismiss, which were filed separately in the two related actions before the case was consolidated. The first argues that the protest claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for lack of timeliness. Mot. Dismiss, ECF No. 26 (TDC-14-3322). The second argues that the records request claims should be dismissed under Federal Rules of Civil Procedure 12(b)(7) and 19 for failure to join necessary parties. Mot. Dismiss, ECF No. 12 (TDC-14-3463). As the case has since been consolidated, the Court will resolve both Motions to Dismiss in this Memorandum Opinion and accompanying Order. The Court has reviewed the pleadings and the briefs and finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, both Motions to Dismiss will be DENIED.

## BACKGROUND

WMATA is a mass transit system that spans the Washington, D.C. metropolitan area. It was formed by Congress through an interstate compact (the "WMATA Compact"), which was then adopted by the states of Maryland and Virginia and by the District of Columbia. *See* Pub. L. No. 89-774, 80 Stat. 1324 (1966); Md. Code Ann., Transp. § 10-204 (West 2015); Va. Code Ann. § 33.2-3100 (West 2015); D.C. Code Ann. § 9-1107.01 (2015). WMATA is therefore an instrumentality of those jurisdictions and enjoys the benefits of such a status. *Lizzi v. Alexander*, 255 F.3d 128, 131 (4th Cir. 2001), *overruled in part on other grounds by Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

On or about June 1, 2012, WMATA published a request for proposals, RFP No. CQ12169/KAM (the "RFP"), seeking proposals from contractors for the provision of paratransit services for the period from July 1, 2013 until June 30, 2018, with a five-year extension option. In response to the RFP, Challenger submitted a proposal on August 24, 2012. Among the other bidders were Veolia Transportation, Inc. ("Veolia"), First Transit, Inc. ("First Transit"), and Diamond Transportation Services, Inc. ("Diamond"). Challenger alleges that, during the proposal evaluation process, WMATA contacted Veolia, First Transit, and Diamond regarding deficiencies in their proposals and invited them to revise their proposals, but did not offer the same opportunity to Challenger.

On March 1, 2013, WMATA notified Veolia, First Transit, and Diamond that they had been awarded contracts for paratransit services. Seven days later, on March 8, 2013, Challenger received a letter from WMATA notifying it that Challenger would not be awarded a contract. Challenger then requested an agency debriefing, which was held on March 21, 2013. Challenger alleges that, at the debriefing, WMATA informed Challenger that the reasons its proposal was

2

not selected were that its evaluated price was approximately $10 million higher per year than that of Veolia; that Challenger's proposal appeared to be for only a single service delivery level; that the proposal lacked sufficient detail regarding past performance, fare collection, billing, and accounting; and that there was a perceived weakness in Challenger's maintenance plan, safety plan, and severe weather operations plan and capabilities.

On March 26, 2013, Challenger filed a protest with WMATA and the next day submitted a request to inspect and copy public records related to the RFP, pursuant to WMATA's Public Access to Records Policy ("PARP"). Challenger alleges that although WMATA slowly released some records responsive to its PARP request, it failed to produce all of the required information by improperly withholding or redacting records. On February 12, 2014, Challenger filed an appeal of WMATA's PARP response, which resulted in the release of one additional document.

Although WMATA failed to disclose First Transit's price proposal as Challenger requested, Challenger alleges that the documents that were disclosed revealed that Challenger's proposed pricing of $325,989,400.69 for the base five-year contract and $410,351,610.41 for the five-year extension was, in fact, lower than Veolia's proposed pricing of $406,550,668.28 for the base five-year contract and $491,423,149.84 for the five-year extension.

On April 10, 2014, Challenger sent a letter to WMATA's Procurement Officer requesting a final decision regarding Challenger's pending protest and asking WMATA to justify its award of the largest contract to Veolia. In response, WMATA issued a denial of Challenger's protest on July 30, 2014.

Challenger subsequently filed suit on August 27, 2014 in the Circuit Court for Montgomery County, Maryland, on the basis of its protest claims (the "protest case"). In the protest case, for which Challenger subsequently filed an Amended Complaint, Challenger alleges

3

that WMATA deviated from the policies laid out in its own 2007 Procurement Procedures Manual ("PPM") by entering discussions with the successful offerors and allowing them to amend their proposals without extending the same privilege to Challenger.[1]  PPM § 619.1.  In addition, Challenger asserts that WMATA improperly awarded the largest contract to Veolia despite the fact that Veolia's proposal cost millions of dollars more than Challenger's. Challenger also claims that there was a conflict of interest because at the time, WMATA's Chairman of the Board, Thomas Downs, was also the Chairman of the Veolia Board of Advisors. Asserting that the awards contradicted the PPM and were arbitrary, capricious, and lacking in rational basis, Challenger requests declaratory relief and an injunction requiring that the awards be rescinded.

On October 2, 2014, Challenger filed a second suit in the Circuit Court of Montgomery County on the basis of its PARP claims (the "PARP case"), alleging that WMATA unreasonably delayed and redacted the requested documents and asking that the Court grant declaratory relief and enjoin WMATA from withholding the records it had failed to produce.

WMATA removed both cases to this Court on October 22, 2014 and November 3, 2014, respectively, on the basis of the Court's original jurisdiction over the case under the WMATA Compact, Md. Code Ann. Transp. § 10-204(81).  WMATA filed two separate Motions to Dismiss: (1) a Motion to Dismiss the protest case (TDC-14-1322) under Federal Rule of Civil Procedure 12(b)(6) based on Challenger's failure to protest its rejection within the five-day period mandated by the PPM, or, in the alternative, its failure to bring the claim within one year of WMATA's award of the contract to the other offerors, which WMATA argues was required

---

[1]     Challenger has not attached the 2007 PPM to its Complaint, but the Complaint contains quotations from the manual, which the Court accepts as accurate for purposes of resolving this Motion to Dismiss.

under Maryland law; and (2) a Motion to Dismiss the PARP case (TDC-14-3463) under Rules 12(b)(7) and 19 for failure to join the other successful offerors as necessary parties.

On December 17, 2014, at the parties' request, the Court consolidated the two cases. The Court now addresses both Motions to Dismiss, which are ripe for adjudication.

## DISCUSSION

### I.     Failure to State a Claim

In the protest case (TDC-14-1322), Challenger alleged that it was not afforded the same treatment as other offerors and that WMATA's award of its paratransit contract "was arbitrary and capricious, lacked a rational basis," and violated "agency regulations and procedures." Am. Compl. ¶¶ 1-4, 18-23, 92. The Court will first address the Motion to Dismiss these claims under Federal Rule of Civil Procedure 12(b)(6).

#### A.  Rule 12(b)(6) Standard

In order to defeat a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

### B. Five-Day Time Limit under the PPM

In its Rule 12(b)(6) motion, WMATA argues that Challenger's protest claims should be dismissed because, under the PPM, a written protest regarding an award decision must be received by WMATA "not later than five calendar days after the interested party knows, or through exercise of reasonable diligence should have known, of the grounds for the protest." TDC-14-3322 Mot. Dismiss at 2-3.  WMATA argues that under this provision, Challenger was required to submit its protest within five days of March 8, 2013, the date Challenger received WMATA's letter stating that Challenger had not been selected for the paratransit services contract.  Challenger filed its protest on March 26, 2013.

Significantly, section 2002.2 of the PPM states that the five-day clock begins when a protestor "knows, or through the exercise of reasonable diligence should have known, of the grounds for the protest."  TDC-14-3322 Am. Compl. ¶ 28 (quoting PPM § 2002.2).  In other words, a disappointed offeror has five days to submit its protest, beginning from the day it knows the reason for rejection, not simply from the day it knows that it was rejected.  Both the Comptroller General and the Maryland State Board of Contract Appeals ("MSBCA") have read similar provisions in government contract cases in the same way.  *See, e.g.*, *East-West Riggers & Constructors*, B-213091, 84-1 CPD ¶ 478, 1984 WL 44075, at *2 (Comp. Gen. Apr. 25, 1984) (holding that a 10-day deadline for protests was measured from the date of the debriefing between the agency and the protestor, because the decision letter rejecting the protestor's offer lacked sufficient specificity to provide notice of the grounds for protest); *Eisner Commc'ns, Inc.*, MSBCA Nos. 2438, 2442, 2445, at 14 (MSBCA Mar. 11, 2005) (holding that the protest submission clock begins to run, at the earliest, on the date of the debriefing session when the protestor had an opportunity to question the agency's scoring of the proposals because otherwise,

6

the protestor "could not have known of the basis for its protests").[2]  Here, although Challenger received notification that it had not been awarded the paratransit services contract on March 8, 2013, the letter contained no reason for rejection and thus no information that provided a basis for protest. *See* Am. Compl., Ex. 3, ECF No. 19 at 35 (TDC-14-3322).  Challenger therefore was not and could not have been aware of its grounds for protest until its debriefing with WMATA on March 21, 2013.  Challenger filed its protest five days later, on March 26, 2013. Thus, the protest was timely filed, and the Motion to Dismiss on this basis is denied.

### C. One-Year Limitation Under Section 12-202

WMATA also argues that Maryland's one-year limitation on waiver of sovereign immunity in contract actions against the state government, Md. Code Ann., State Gov't § 12-202, bars Challenger's protest claims because Challenger filed them more than a year after WMATA awarded its paratransit services contract to other companies.  It further argues that if the Court concludes that Challenger's protest claims do not sound in contract such that the limited waiver of immunity granted by section 12-202 does not apply, then it must also conclude that Challenger's claims are barred by the doctrine of sovereign immunity because there are no other bases for waiver of WMATA's immunity.  The Court denies WMATA's motion to dismiss on these grounds because neither section 12-202 nor sovereign immunity bars Challenger from bringing its claims.

WMATA enjoys the same sovereign immunity as the State of Maryland and therefore is immune from all common law claims unless waived. *Lizzi*, 255 F.3d at 132 ("WMATA is a state agency, subject to all the benefits and liabilities of a state itself, including sovereign immunity."); *see also Magnetti v. Univ. of Md.*, 937 A.2d 219, 224 (Md. 2007) (stating that the doctrine of

---

[2]   MSBCA opinions dating from 1997 forward are available through the MSBCA website. *Eisner Commc'ns* can be found at http://msbca.state.md.us/decisions/2005/pdf/2438eisner.pdf.

sovereign immunity applies in actions against the State, its officers, and its units unless explicitly or implicitly waived by the legislature).   Maryland law provides that sovereign immunity is waived in the case of "a contract action . . . based on a written contract that an official or employee executed for the State," provided that "the claimant files suit within 1 year after the later of:  (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim."  Md. Code Ann., State Gov't §§ 12-201 to -202.  This provision has been interpreted as establishing a condition precedent requiring that, as part of the State's waiver of sovereign immunity, contract actions against the State must be brought within one year of the injury.  *Samuels v. Tschechtelin*, 763 A.2d 209, 240 (Md. Ct. Spec. App. 2000) (affirming that "[t]he rule in Maryland is that when a statute creating a cause of action contains a limitation period on the filing of such cause of action that limitation will not be considered an ordinary statute of limitations but rather a condition precedent").

However, section 12-202 does not apply to Challenger's protest claims because those claims do not state a cause of action under contract law.  Challenger does not allege any breach of contract by WMATA; rather, it alleges that WMATA arbitrarily and capriciously violated its own procurement policies and procedures, PPM § 619.1 and 2000.3, in awarding the paratransit services contract to Veolia and the other successful offerors.  Courts have treated WMATA as a federal agency when a party seeks to challenge WMATA's procurement decisions in federal court.  *See Seal & Co., Inc. v. WMATA*, 768 F. Supp. 1150, 1156 (E.D. Va. 1991) (finding that an aggrieved offeror had standing to sue because the statutory language and legislative history of the WMATA Compact shows that "Congress intended WMATA to conduct its procurements as a federal agency would" and "to be subject to suits by aggrieved bidders for procurement activities in violation of the Compact or WMATA's regulations"); *Monument Realty, LLC v.*

*WMATA*, 535 F. Supp. 2d 60, 73 (D.D.C. 2008) (treating WMATA as a federal agency for purposes of standing in an action challenging a procurement decision by WMATA); *see also Elcon Enters., Inc. v. WMATA*, 977 F.2d 1472, 1479-80 (D.C. Cir. 1992) (assuming *arguendo* that WMATA is a federal agency and therefore subject to applicable federal procurement law). Therefore, contract award protest claims, such as those Challenger brings against WMATA in this case, are statutory causes of action that arise out of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, and federal procurement law. *See Monument Realty*, 535 F. Supp. 2d at 73-74 (concluding that "WMATA's procurement decisions must be in accordance with the APA and applicable federal law," and applying that law to a challenge to WMATA's contract award process); *see also Elcon*, 977 F.2d at 1480 (applying the APA and relevant procurement law in a contract award protest case against WMATA). Thus, section 12-202 does not bar Challenger's protest claims because it applies only to contract claims, not to statutory causes of action. *See Three Lower Cnties. Cmty Health Servs. v. Md. Dep't of Health & Mental Hygiene*, No. WMN-10-2488, 2011 WL 31444, at *6 (D. Md. Jan. 5, 2011) (determining that section 12-202 did not apply to a claim seeking enforcement of the reimbursement system under the Medicaid Act because it was a statutory claim), *aff'd* 490 Fed. App'x 601 (4th Cir. 2012).

Likewise, WMATA's claim that there is no other waiver of sovereign immunity to allow Challenger's protest action also fails. Courts within the Fourth Circuit and the District of Columbia Circuit have recognized that such suits by disappointed offerors against WMATA are permitted, either under the WMATA Compact or under federal law. *See, e.g., Seal & Co.*, 768 F. Supp. at 1157 ("[T]he existence of a cause of action for disappointed bidders is arguably implicit . . . in the scheme of the [WMATA] Compact"); *Monument Realty*, 535 F. Supp. 2d at 73 (finding that WMATA is a federal agency for purposes of challenges to procurement decisions,

and stating that "[i]t is well settled that actions of a federal agency alleged to be arbitrary and capricious violations of the statutes and regulations governing the awards of federal contracts are subject to judicial review" under the APA); *Elcon*, 977 F.2d at 1479-80.  The Court therefore denies the Motion to Dismiss Challenger's protest claims.

## II.     Failure to Join Necessary Parties

The Court next addresses WMATA's second Motion to Dismiss, originally filed in Challenger's PARP case (TDC-14-3463), which alleges that WMATA wrongfully withheld and redacted information that Challenger requested under PARP.  WMATA seeks dismissal under Federal Rule of Civil Procedure 12(b)(7) for failure to join a required party, based on its position that the successful offerors are necessary parties to these claims under Rule 19(a)(1).  WMATA therefore requests that the Court direct Challenger to file an amended complaint joining Veolia, First Transit, and Diamond, or, if Challenger fails to do so, dismiss Challenger's PARP claims altogether.  The Court concludes, however, that the successful offerors are not necessary parties.

### A.  Rule 12(b)(7) Standard

Under Federal Rule of Civil Procedure 12(b)(7), a party may move for dismissal "for failure to join a party under Rule 19."  *Id.*  When faced with a Rule 12(b)(7) motion to dismiss, the court engages in a two-step inquiry.  First, it must determine whether the absent party is necessary under Rule 19 because complete relief could not be provided without that party's involvement in the case, or because the absent party claims an interest in the action such that the result of the case could impede that party's ability to protect its interest or impose double or inconsistent obligations.  Fed. R. Civ. P. 19(a)(1); *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).  Second, if the party is necessary but joinder would destroy jurisdiction over the case, the court must determine that the absent party is indispensable to the action in order to

10

grant dismissal. *Owens-Illinois*, 186 F.3d at 440. "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Id.* at 441.

### B. Joinder of Successful Offerors

Challenger's PARP claim alleges that WMATA impermissibly withheld information to which Challenger is entitled under the PARP. The successful offerors are not necessary parties for resolution of those claims because the Court can provide complete relief to Challenger without involving them in this case, and because the result of this case would not impede their ability to protect their interests.

A party's entitlement to records under the PARP is analogous to that provided by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See ERG Transit Sys. (USA), Inc. v. WMATA*, 593 F. Supp. 2d 249, 250 (D.D.C. 2009) (noting that, for purposes of determining whether certain records are exempt from compelled disclosure, "WMATA's Public Access to Records Policy . . . is identical to, and interpreted in accordance with, the FOIA."). Under both the PARP and FOIA processes, an agency may decline to release agency records that contain "trade secrets and commercial or financial information obtained from a person" that are "privileged or confidential." 5 U.S.C. § 552(b)(4); PARP § 6.1.4. Such information is confidential only if its disclosure is likely to "impair the Government's ability to obtain necessary information in the future" or "to cause substantial harm to the competitive position" of the source of the information. *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 903-05 (D.C. Cir. 1999).

WMATA argues that release of the previously withheld documents as a result of this litigation could disclose sensitive information regarding the successful offerors, such that those

companies must be joined in the suit to protect their interests.  WMATA also argues that if the Court does not mandate their joinder, it would open the door for the successful offerors to bring reverse FOIA suits against WMATA.[3]

These arguments are unpersuasive.  Both the PARP and FOIA processes contemplate the need to consider the views of third parties whose documents may be subject to disclosure.  Under PARP rules, WMATA is required to notify offerors when there is a request for documents containing their business information, if WMATA determines that such documents should be released, and when there is a lawsuit seeking to compel such disclosure.  PARP §§ 7.11.4, 7.11.7, and 7.11.9.  WMATA is required to consider any objections by the offerors to such disclosure.  PARP § 7.11.7.  Thus, there is already a mechanism by which to receive and incorporate the views of the successful offerors into the process.  Under such circumstances, the successful offerors need not be named parties in this action in order to allow for complete relief, and the result of the case will not impede their ability to protect their interests or impose double or inconsistent obligations.  Fed. R. Civ. P. 19.

Significantly, in its Reply Brief, WMATA informed the Court that it initiated contact with the successful offerors to determine whether they intended to file motions to intervene in this litigation to protect any interests they may have in its result.  The Reply Brief was filed on January 5, 2015, and neither WMATA nor the successful offerors have filed anything further on this issue of joinder.  Thus, the successful offerors have been notified of this action and have apparently declined to join or to file a reverse FOIA action, which in any event would likely be

---

[3]  In a reverse FOIA case, a party brings an action seeking an injunction to prevent the release by a government agency of information it believes to be proprietary or a trade secret.  *See, e.g.,* *Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008).

consolidated with this action. Accordingly, the Court denies the motion to dismiss for failure to join required parties under Rule 12(b)(7).

## CONCLUSION

For the foregoing reasons, both Motions to Dismiss, ECF No. 26 (TDC-14-3322) and ECF No. 12 (TDC-14-3463), are DENIED. A separate Order follows.

Date: July 30, 2015

THEODORE D. CHUANG
United States District Judge

13