## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHALLENGER TRANSPORTATION, INC.,

      Plaintiff,

      v.

                           Civil Action No. TDC-14-3322

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

      Defendant.

## MEMORANDUM OPINION

Plaintiff Challenger Transportation, Inc. ("Challenger") is a disappointed offeror contesting a procurement decision by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). Pending before the Court is Challenger's Motion for Summary Judgment. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

The following facts are presented in the light most favorable to WMATA, the non-moving party:

### I.    Challenger's Unsuccessful Proposal

On June 1, 2012, WMATA issued a request for proposals, RFP No. CQ12169/KAM (the "RFP"), seeking contractor proposals to provide transportation services to senior citizens and persons with disabilities through WMATA's MetroAccess program. The RFP indicated that WMATA would award multiple five-year contracts, each with an option for an additional five

years.   WMATA would award contracts to those offerors whose proposals provided the "best value" to WMATA based on technical, management, and financial criteria, with cost serving as a distinguishing factor among proposals deemed otherwise substantially equal.   Pl.'s Mot. for Summ. J. Ex. 2, RFP at 26-27, ECF No. 42-2.

The RFP explained that a Technical Evaluation Team (the "TET") would assign each proposal scores from one to ten in each of three categories:   Operating Plan and Procedures, Program Management, and History of Past Performance.   The weighted average of a proposal's three scores had to be above 5.0 for that proposal to receive further consideration.   An average score below 3.0 meant that the proposal contained "uncorrectable" deficiencies and demonstrated "a lack of understanding of WMATA's requirements or omissions of major areas."  *Id.* at 30.

Eleven offerors submitted proposals to provide transportation services:   Challenger; Diamond Transportation Services, Inc. ("Diamond"); First Transit, Inc. ("First Transit"); Veolia Transportation Services, Inc. ("Veolia"); MV Transportation, Inc. ("MV"); Keolis Transit Services, LLC ("Keolis"); Premier Paratransit, LLC ("Premier"); Ride Right, LLC ("Ride Right"); SCR Medical Transportation, Inc. ("SCR"), and TransCare Maryland, Inc. ("TransCare").  In late November 2012, the TET submitted "clarification questions" to Diamond, First Transit, Veolia, MV, Keolis, and SCR.  Def.'s Opp. Ex 2, TET Memo at 1, ECF No. 47-2. First Transit, Diamond, and Veolia received emails containing 50, 25, and 33 questions, respectively, regarding a variety of issues ranging from the experience of their employees to the details of their severe weather response plans.

On January 9, 2013, the TET memorialized its assessment of the proposals.  Challenger received average scores of 2.0 in both the Operating Plan and Procedures and Program Management categories and an average score of 1.6 in the History of Past Performance category.

2

Challenger's average score across all three categories was 1.9, the second lowest of all offerors. The TET concluded that Challenger, along with Premier, Ride Right, TNT, and TransCare, which also received average scores less than 3.0, "did not meet technical evaluation standards," and the TET did "not recommend proceeding with these proposers." Tet Memo at 6. By contrast, Diamond, First Transit, Veolia, MV, Keolis, and SCR all had average scores above 6.0 and "met the technical evaluation standards." *Id.*

After receiving the TET's recommendation, WMATA's Chief Procurement Officer determined that the proposals from Diamond, First Transit, Veolia, Keolis, and SCR were in the competitive range for this procurement. The Chief Procurement Officer then initiated discussions with each offeror in the competitive range. These discussions resulted in certain revisions to the proposals, including changes to cost estimates. WMATA then asked Diamond, First Transit, Veolia, and Keolis to submit their best and final offers. By February 27, 2013, WMATA had decided to award contracts to Diamond, First Transit, and Veolia. Award offers were mailed on March 1, 2013.

On February 12, 2013, Challenger's president emailed WMATA to ask if WMATA wanted Challenger to extend the term of its proposal, which was set to expire soon. On February 15, WMATA requested such an extension, noting that it was "still evaluating proposals." Pl.'s Mot. for Summ. J. Ex. 1, Mohebbi Aff. Ex. A. Challenger agreed to the extension. On March 8, 2013, Challenger received a letter stating that WMATA had rejected its proposal.

On March 21, 2013, at an agency debriefing requested by Challenger, a WMATA official told Challenger that its proposal was deficient in key areas and was not cost competitive. Five days later, Challenger filed a protest in which it sought to refute the alleged deficiencies. WMATA denied the protest on July 30, 2014. The denial letter stated:

> Challenger was not selected for award because of numerous, serious deficiencies in its proposal, including:   (1) multiple, documented problems with past performance, such as accounts of multiple sexual assaults by drivers on WMATA customers; failure to meet FTA drug testing protocols; failure to timely report accidents; failure to safely operate vehicles; and violations of federal labor law, among other things; (2) failure to provide specific detail in such areas such as safety, maintenance, and fare collection; and (3) deficiencies in Challenger's plan for customer service and quality assurance.

Pl.'s Mot. for Summ. J. Ex 19, Protest Denial at 1, ECF No. 42-19.  The denial letter also stated that WMATA had not established a competitive range for the procurement.

## II.     Procedural History

On August 27, 2014, Challenger filed a Complaint in the Circuit Court for Montgomery County, Maryland, alleging that WMATA violated its own procurement procedures during the MetroAccess procurement.  WMATA removed the case to federal court.  On December 1, 2014, Challenger filed an Amended Complaint.  On December 18, WMATA filed a Motion to Dismiss.  On May 11, 2015, while the Motion to Dismiss was still pending, Challenger filed the present Motion for Summary Judgment.  WMATA filed an Opposition on July 10, 2015.  On July 30, 2015, the Court denied WMATA's Motion to Dismiss.  On August 7, 2015, Challenger filed a Reply to WMATA's Opposition.   On August 13, 2015, WMATA filed an Answer to the Amended Complaint.

## DISCUSSION

## I.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  The nonmoving party has the burden to show a genuine dispute on a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.* at 248-49.

WMATA's Opposition urges the Court to deny the Motion for Summary Judgment as premature because, at the time it was filed, the Court had yet to rule on the Motion to Dismiss and because discovery has yet to begin.  At this point, the Court has denied WMATA's Motion to Dismiss, and WMATA has not argued that "it cannot present facts essential to justify its opposition" to the Motion for Summary Judgment, Fed. R. Civ. P. 56(d).  The Court agrees that this case would have proceeded more efficiently had Challenger filed its Motion for Summary Judgment after discovery, when a more complete record would be available.  However, because a ruling at this time may assist the parties as the case continues, the Court will not deny the Motion for Summary Judgment as premature.

## II.    Source Selection Documents

In opposing the Motion, WMATA relies on two documents attached to its Opposition to the Motion for Summary Judgment:  a January 9, 2013 memorandum conveying to WMATA procurement officials the TET's assessment of the MetroAccess service delivery proposals (the "TET Memo") and a February 26, 2013 memorandum from WMATA Contract Administrator Karen McSween to the procurement file documenting WMATA's competitive range

determination and contract award decisions (the "McSween Memo"). Before initiating this action, Challenger submitted a request under WMATA's Public Access to Records Policy ("PARP") for records relating to WMATA's evaluation of the MetroAccess proposals. In responding to the request, WMATA invoked the deliberative process privilege to withhold certain records from Challenger, including the TET and McSween Memos. Arguing that WMATA is improperly attempting to wield the deliberative process privilege as both sword and shield, Challenger asks the Court to refuse to consider the TET and McSween Memos in resolving the Motion.

At the summary judgment stage, a court should not consider "material cited to support or dispute a fact" if that material "cannot be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2). Challenger does not claim that the Federal Rules of Evidence would bar the admission of the TET or McSween Memos. Instead, it cites two cases applying the principle that a party's waiver of the attorney-client privilege for some information limits its ability to assert that privilege for related information. *Parler & Wobber v. Miles & Stockbridge*, 756 A.2d 526, 538, 542 (Md. 2000) (holding that where a client has filed a suit for malpractice against one former attorney, it cannot invoke the attorney-client privilege to withhold attorney-client communications from an impleaded successor attorney); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974) (holding that a party's disclosure of information protected by the attorney-client privilege during settlement negotiations waives the privilege for other communications relating to the information disclosed). This case presents the reverse situation: a party that has previously asserted a privilege now seeks to waive it in part. The assertion of a privilege does not bar its subsequent waiver under different circumstances. WMATA's conclusion that it was not legally obligated to disclose documents pursuant to a

PARP request does not preclude it, when faced with litigation and Challenger's Motion for Summary Judgment, from waiving the privilege and offering such material as evidence in opposition to the Motion, *see* Fed. R. Civ. P. 56(c)(1), so long as it understands that it has likely waived the privilege for other communications relating to the source selection decision and will likely need to produce such documents in response to discovery requests. *See Burlington Indus.*, 65 F.R.D. at 46. Nor are these documents the functional equivalent of a sham affidavit generated to avoid summary judgment, as Challenger alleges, since they plainly pre-dated the filing of this case.

If WMATA had refused to produce these documents during discovery, Challenger might have had a compelling argument. Challenger, however, chose to file the Motion before undertaking any discovery. In doing so, it assumed the risk that unpleasant surprises, such as documents harmful to its position, lay in wait. The Court will consider the TET and McSween Memos in resolving the Motion.

### III.   The Contract Award

Section 73 of the interstate compact that created WMATA (the "WMATA Compact") addresses WMATA's contracting and purchasing authority. It provides that WMATA must "obtain full and open competition through the use of competitive procedures" when procuring goods and services. WMATA Compact § 73(a)(1)(A). WMATA must adopt contracting and purchasing policies and procedures. *Id.* § 73(g). These policies are contained in WMATA's Procurement Procedures Manual ("PPM").[1] Section 73 also affords WMATA discretion to "reject any and all bids or proposals received in response to a solicitation." *Id.* § 73(h).

---

[1]   In their briefs, WMATA and Challenger cite different versions of the PPM. Since WMATA does not rebut Challenger's contention that the 2007 version of the PPM governs the present RFP, which was issued in June 2012, the Court will apply that version.

Although the WMATA Compact grants to federal district courts original jurisdiction over "all actions brought by or against" WMATA, *id.* § 81, it does not specifically provide for judicial review of WMATA procurement decisions.  Federal courts, however, have recognized a cause of action for a disappointed offeror to challenge a WMATA contract award, analogous to a challenge to a federal agency's procurement decision, under a standard comparable to that applied under the Administrative Procedure Act.  *Elcon Enters., Inc. v. WMATA*, 977 F.2d 1472, 1478-80 (D.C. Cir. 1992); *Monument Realty LLC v. WMATA*, 535 F. Supp. 2d 60, 73-74 (D.D.C. 2008); *Seal & Co., Inc. v. WMATA*, 768 F. Supp. 1150, 1157 (E.D. Va. 1991).  A court may not overturn a procurement decision unless there was no "rational basis" for the decision, or the process "involved a clear and prejudicial violation of applicable statutes or regulations."  *Elcon Enters.*, 977 F.2d at 1478; *Monument Realty LLC*, 535 F. Supp. 2d at 74.  Thus, a court's review is a two-step process.  First, the court determines if the agency violated applicable procurement law or otherwise acted without a rational basis.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  It then decides if the agency's action caused significant prejudice to the offeror.  *Id.* at 1351, 1353; *Monument Realty LLC v. WMATA* (*Monument Realty II*), 540 F. Supp. 2d 66, 77 (D.D.C. 2008).

## A.     Compliance With PPM § 619.2

Challenger's protest centers on its contention that WMATA violated its procurement procedures by denying Challenger the opportunity to revise its proposal when it extended that opportunity to other offerors.  In negotiated procurements such as the MetroAccess RFP, WMATA's Contracting Officer establishes a "competitive range," or list of proposals "that have a reasonable chance of being selected for award."  PPM § 618.2 (2007).  The Contracting Officer may then engage in "discussions" with each of the offerors that have proposals in the

competitive range.  *Id.* §§ 618.1, 619.1.  The 2007 PPM distinguishes between "discussions,"
which occur only after the Contracting Officer has established a competitive range, and
"communications conducted for the purpose of minor clarifications," which can occur at any
time, *see id.* § 619.1(b).

During discussions with an offeror, the Contracting Officer identifies deficiencies,
mistakes, and uncertainties in the proposal and allows the offeror the opportunity to resolve
them.  *Id.* § 619.4.  The Contracting Officer also allows the offeror to explain past performance
information received from references and to submit any cost, technical, or other revisions to the
proposal.  *Id.*  The Contracting Officer must ensure "that, if discussions are held with any offeror
within the competitive range, discussions are held with all offerors in the competitive range."  *Id.*
§ 619.2.  The purpose of this restriction is "to prevent a bidder from gaining an unfair advantage
over its competitors by making its bid more favorable to the government in a context where the
other bidders have no opportunity to do so."  *Info. Tech. & Applications Corp. v. United States*,
316 F.3d 1312, 1320 (Fed. Cir. 2003) (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1561
(Fed. Cir. 1996)) (discussing provisions in federal procurement statutes similar to PPM
§ 619.2)).

Challenger claims that WMATA never excluded it from the competitive range and
therefore was required under PPM § 619.2 to hold discussions with Challenger on the same
terms as other offerors.  As support, Challenger points out that in WMATA's written denial of
Challenger's protest, WMATA stated that it did not establish a competitive range for the
MetroAccess procurement.  Challenger also reasons that its proposal must have remained in the
running when WMATA engaged in discussions with other offerors because, on February 15,
2013, WMATA requested more time to consider Challenger's proposal.  Finally, despite a

provision of the PPM requiring WMATA to notify an offeror "at the earliest practicable time" when WMATA is no longer considering its proposal, PPM § 618.4, WMATA did not inform Challenger that WMATA had rejected its proposal until after WMATA had awarded the contracts.

WMATA counters that the TET and McSween Memos show that it did, in fact, establish a competitive range, and that Challenger was not included in that range. McSween Memo at 5 ("Based on this review, the CPO determined that the following firms were in the competitive range: Diamond, First Transit, Keolis, SCR, and Veolia."). Because, as discussed above, the Court has rejected Challenger's argument that the Court may not consider those memoranda, there is thus a genuine dispute of material fact whether WMATA excluded Challenger from a competitive range prior to discussions.

Even if WMATA excluded Challenger from the competitive range before formal discussions, Challenger argues that WMATA may still have violated its own policies and procedures when it sent email questions to some, but not all, of the offerors before establishing the competitive range. In November 2012, before submitting its recommendations on a competitive range, the TET sent emails to Diamond, First Transit, Veolia, MV, Keolis, and SCR containing "clarification questions" about their proposals. TET Memo at 1. Challenger asserts that these communications qualify as discussions because, in its view, they resulted in revisions of and modifications to proposals. If these pre-competitive range communications with a subset of offerors constituted discussions, rather than clarifications, then they arguably may have violated PPM § 619.2.

That provision, however, applies only to discussions "with any offeror in the competitive range," PPM § 619.2, and thus would not have been violated by communications prior to the

establishment of the competitive range.  Notably, WMATA contemporaneously described its

pre-competitive range communications not as "discussions" but as "clarification questions."[2]

TET Memo at 1; Pl.'s Mot. for Summ. J. Exs. 8-10, Nov. 29, 2012 Emails to First Transit,

Diamond, and Veolia, ECF Nos. 42-8 to 42-10.  On a review of the questions to First Transit,

Diamond, and Veolia, they generally appear to consist of just that—questions seeking additional

details in order to better understand the proposals' existing terms in order to assess whether they

fall within the competitive range, rather than providing an opportunity for substantive

modification of the proposals.  *Cf.* 48 C.F.R. § 15.306(b) (authorizing such communications to

assist with the establishment of the competitive range in federal procurements).  Thus, on the

limited record before the Court, which at this point does not contain the offerors' responses to

WMATA's questions or any of the communications between WMATA and MV, Keolis, and

SCR, a reasonable jury could conclude that WMATA had not engaged in discussions before

establishing a competitive range and thus did not violate its procurement procedures.

### B.      Prejudice

In addition to proving that WMATA violated its regulations, Challenger must also show

that it has suffered significant prejudice from the violation.  *Bannum, Inc.*, 404 F.3d at 1351,

1353.  To establish significant prejudice, an offeror "must show that there was a substantial

chance it would have received the contract award but for" the alleged error in the procurement

process.  *Id.* at 1358; s*ee also Monument Realty II*, 540 F. Supp. 2d at 77 (applying *Bannum*'s

definition of prejudice to a disappointed offeror's challenge to a WMATA contract award).

---

[2]      Challenger contends that the McSween Memo refers to pre-competitive range
communications with Veolia as "discussions."  In fact, that reference appears to relate to
communications that occurred after the TET made recommendations that led to the establishment
of the competitive range.  *Compare* McSween Memo at 8 *with* Pl.'s Mot. for Summ. J. Ex. 12,
Feb. 12, 2013 Letter from Veolia to WMATA, ECF No. 42-12.

WMATA has presented significant evidence that there was no "substantial chance" that Challenger would have received the contract in the absence of the alleged violation of WMATA's procurement procedures.  The TET Memo reveals that the TET assigned Challenger's proposal average scores of 2.0 or below, on a 10-point scale, for each of the three categories set out in the RFP.  In particular, the TET noted that Challenger's history of past performance was "poor," including in such areas as "driver behavior, attainment of performance measures, management practices, and adherence to MetroAccess policy and procedures."  TET Memo at 6.  Challenger's overall average score of 1.9 fell well below the score of 5.0, which the RFP set as the bar for further consideration, and reflected the TET's judgment that the proposal contained uncorrectable deficiencies and was not technically acceptable.  Significantly, Challenger's proposal received poor marks not only in isolation, but also in comparison to other proposals.  The TET awarded higher scores to nine of the ten other offerors, including six that were also denied service delivery contracts.

Challenger argues that it was disadvantaged because WMATA's clarification questions to certain offerors gave them the opportunity to address some of the same deficiencies on which WMATA relied in rejecting Challenger's proposal.  For instance, WMATA asked Veolia, but not Challenger, to clarify its proposal by providing its Continuity of Operations Plan and more detail on its severe weather plan, then later criticized Challenger's proposal for being deficient in these same areas.  But Challenger scored lower than three unsuccessful offerors—TransCare, Ready Ride, and Premier—which similarly did not receive any clarification questions before being excluded from the competitive range.  Thus, it is exceedingly unlikely that Challenger would be able to show that there was a "substantial chance" that it would have received a

contract award absent any failure by WMATA to follow its procedures.  *See Bannum, Inc.*, 404 F.3d at 1358.

Challenger cites *KPMG LLP*, B-406409 *et al.*, 2012 WL 2020396 (Comp. Gen., May 21, 2012), for the premise that Challenger can establish significant prejudice simply by showing that WMATA's violation denied it an opportunity to improve its "competitive position." *Id.* at *9. In *KPMG LLP*, the agency misrepresented its award criteria during discussions in a way that denied the protesting offeror an opportunity to lower its costs, a critical disadvantage given that its proposal had received technical ratings comparable to that of the successful offeror. *Id.* at *7-8. The agency's error thus significantly prejudiced the protesting offeror by harming its competitive position, even though it had not proven that it would have won the contract absent the agency's violation. *Id.* at *9.

The facts of this case diverge sharply from those in *KPMG LLP*.  The TET concluded that Challenger's proposal was inferior to all but one of the other offerors and that its technical deficiencies were so severe that they could not be corrected through revisions, such that Challenger "failed to meet an acceptable evaluation standard."  TET Memo at 5.  Challenger may have offered a lower cost than Veolia, but, in a "best value" procurement, cost is not the determinative factor.  Thus, unlike in *KPMG LLP*, Challenger was not even close to being competitive with the winning offerors and so has not shown that improving its competitive position would have given it a substantial chance to receive a contract award.

Based on the limited record before the Court, and particularly when the facts are viewed in the light most favorable to the nonmoving party, there is, at worst for WMATA, a genuine issue of material fact whether Challenger suffered significant prejudice. Having failed to

establish the lack of a genuine issue of material fact on either prong, Challenger cannot succeed on its Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, Challenger's Motion for Summary Judgment is DENIED.  A separate Order shall issue.


Date:  January 21, 2016                                                    /s/
                                                          THEODORE D. CHUANG
                                                          United States District Judge